F I L E D
Clerk
District Court

NOV 13 2013

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>    v.<br><br>WEI LIN,<br><br>                    Defendant. | Case No. 1:12-cr-00012-1<br><br>**DECISION AND ORDER**<br>**DENYING WEI LIN'S**<br>**MOTION TO WITHDRAW PLEA** |

Defendant Lin has filed, prior to sentencing, a motion seeking to withdraw his plea of guilty to the offense of conspiracy to commit sex trafficking. (ECF No. 147; *see also* ECF No. 156 (hereinafter "Motion"[1]).) The Government filed its opposition (ECF No. 163 (hereinafter "Opposition")), and Defendant his reply (ECF No. 168 (hereinafter "Reply")). Having reviewed the record, and considered the arguments of counsel on this motion on October 16, 2013, the Court DENIES Lin's motion.

## I.   BACKGROUND

Lin was indicted for various sex trafficking offenses on April 30, 2012. (ECF No. 3.) He was previously indicted for, tried, and convicted of document fraud and making a false statement to a federal agent. (Case No. 1:11-cr-00008, ECF No. 47.) He was also previously indicted for foreign

---

[1] Defendant's amended memorandum in support of his amended motion to withdraw his guilty plea adds just one newly discovered legal authority, but does not raise any new legal argument or new facts. Accordingly, the Court will rely on Defendant's amended memorandum.

labor contracting fraud and alien smuggling (Case No. 1:11-cr-00030, ECF No. 1), but that indictment was superseded by the indictment in this action (*see* Case No. 1:11-cr-00030, ECF No. 24 at 2; ECF No. 3 at 1).

Plea negotiations in this matter were lengthy. The attorneys originally negotiating these pleas—Kirk Schuler for the Government and Joseph Camacho for Lin—have since left the practice of law before this Court. (Schuler has moved on to another DOJ detail; Camacho is now a Commonwealth judge.) A plea offer letter from Schuler to Camacho lists the base offense level for a conviction of sex trafficking under 18 U.S.C. § 1591(b)(1) as 34, and it also offered a plea of guilty to both a conspiracy to commit sex trafficking under 18 U.S.C. § 371 and a labor fraud offense. (ECF No. 163-5.) Current counsel for Lin was apparently unaware of this letter's contents. (ECF No. 167.) Counsel was, however, aware of the plea itself, as his negotiations with the Government's current counsel initially involved this offer. (*See* ECF Nos. 163-11, 163-12; *see also* Opposition at 6.) Months passed, but Lin did not accept that plea. (*See* Opposition at 6–8). As the case progressed, the Government offered a new plea: a plea of guilty to conspiracy to commit sex trafficking under 18 U.S.C § 1594. (ECF No. 163-13.)  This new deal was a result of Lin's co-counsel Michael W. Dotts' suggestion to a deal that would not require Lin to stipulate to the Government's version of the facts, and for Defendant to walk into court and plead guilty to Count One of the Superseding Indictment on his own.  (*See* Opposition at 7.)

Lin accepted this plea, and on June 8, 2012, he entered a guilty plea pursuant to that plea agreement. (*See* ECF No. 14 (hereinafter "Plea Agreement").) The agreement provides that "[a]lthough there is no mandatory minimum sentence of imprisonment for this offense, Defendant understands that the maximum statutory sentence is life imprisonment." (Plea Agreement at 2, ¶5.) Defendant also understood that

2

the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the U.S. Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court.

(Plea Agreement at 3, ¶ 8.) The next paragraph in the plea agreement repeats this language, and further provides that "defendant also understands that should there be discrepancies in the final sentencing guideline range determined by the U.S. Probation Office and that projected by his attorney or any other person, such discrepancy is not a basis to withdraw his guilty plea." (*Id*. at 4, ¶ 9.) At the change of plea hearing, Defendant was placed under oath and assisted by an interpreter. (Transcript of Change of Plea Hearing held on June 8, 2012, ECF No. 49 at 3-4, hereinafter "Transcript")   For purposes of the instant motion, the following exchange occurred between the Court and Defendant regarding his base offense level, as well as his possible sentence:

> **THE COURT**:   Let me focus now about your possible sentence, in particular regarding incarceration that I referenced the advisory Sentencing Guidelines. Even those guidelines may possibly authorize me to depart from the guidelines. That means I may go upward or downward, as the case may be, as well as the other sentencing statutory factors. So statutory means it's the Federal law that our U.S. Congress has required me to consider. There are seven different factors. In fact, factor number two has subsets of itself. So there are many things that I must consider. I need to make sure you are also aware of those factors and should have discussed those with your attorney.  Have you and your attorney talked about how these advisory Sentencing Guidelines might apply to your case?
>
> **DEFENDANT**:   Yes.
>
> **THE COURT**:   Because this is a very serious offense, I want you to be clear. I've actually – I don't do this all the time, but I've taken an initial glance, shall I say, of the possible sentencing guideline, depending on how it's interpreted and applied for the conspiracy offense that under the guideline directs the application. It could be a base offense level high – was it 31 or 34?  Or depending on the application, it could be at 14, which relative to the minimum mandatory that you're facing in counts two to five is very low, because that would only subject you to a couple or a few years. But where and what the final sentence will be will not be decided until a full investigation is done by the U.S. Probation Office to establish certain facts. Do you understand that?

**DEFENDANT**: I understand.

**THE COURT**: Once the Presentence Report is prepared, you and the attorney for the Government will have an opportunity to challenge the reported facts and the application of the guidelines recommended by the Probation Officer, and that the sentence ultimately imposed may be different from any estimate you and your attorney may have. Do you understand that?

**DEFENDANT**: I understand.

(Transcript at 33-35.)

## II.  STANDARD

Prior to sentencing, "[a] defendant may withdraw a plea of guilty or nolo contendere if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant bears "[t]he burden of establishing that withdrawal is warranted . . . ." *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009).

"[F]air and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *E.g.*, *id.* at 591. If a fair and just reason exists, withdrawal "should be freely allowed." *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir. 2009). But ultimately, the decision to permit or deny withdrawal "is solely within the discretion of the district court." *E.g.*, *id.* (internal quotation marks omitted); Charles Alan Wright & Arthur R. Miller, 1A *Fed. Prac. & Proc. Crim.* § 181 (4th ed.) (noting the extent of this discretion).

## III.  DICUSSION

Lin seeks to withdraw his guilty plea for three reasons: inadequate legal advice, the Government's alleged bad faith, and newly discovered evidence. (*See* Motion at 1–2.) The Court addresses each basis in turn.

4

**A. INADEQUATE LEGAL ADVICE**

Lin argues that his attorney's inadequate legal advice constitutes a fair and just reason for plea withdrawal. (Motion at 5–10.) Principally, defense counsel Banes points to his advice that Lin would receive roughly three to six years imprisonment based on his belief that a base offense level of 14 applied to the offense. (*Id.* at 9.) The U.S. Probation Office concluded as well that the appropriate base offense level was 14. (See ECF No. 34, Presentence Investigation Report.) Subsequently, this Court determined that the base level was actually 34. (ECF No. 102.) Given that the Court usually sentences under the Sentencing Guidelines, Lin contends that his errant on sentencing exposure suffices to permit plea withdrawal. (*See* Motion at 9.)

Erroneous legal advice on sentencing exposure permits plea withdrawal where "proper advice could have at least plausibly motivated a reasonable person in the defendant's position not to have pled guilty had he known about the grounds for withdrawal prior to pleading." *See United States v. Mayweather*, 634 F.3d 498, 504, 506–07 (9th Cir. 2010) (internal quotation marks and brackets omitted).

This ground does not, however, mandate withdrawal where the change of plea proceeding details the correct sentencing range. *See id.* at 506–07. So, for example, where the defendant's attorney advises her that the maximum sentence is 60 months—when that is actually the minimum sentence and the maximum is life—the defendant may not withdraw her plea when the plea proceeding details the correct range. *Id.*

Contrast this with the situation where the plea proceeding details the incorrect sentencing guideline. Where the proceeding discusses only one sentencing guideline and that guideline later turns out to be inapplicable, in some circumstances it may be an abuse of discretion to not permit withdrawal. *See United States v. Toothman*, 137 F.3d 1393, 1399–1401 (9th Cir. 1998). This is so when "[a]ny reasonable person would conclude from this [plea] colloquy that the guideline range"

discussed would be applicable and because the government—knowing of the alternative guideline's potential application—"should have explained this possibility . . . ." *Id.* at 1400. At bottom, withdrawal in these circumstances must be permitted due to everybody's—his attorney's, the government's, and the court's—misinforming the defendant. *See id.*

The plea proceeding here adequately advised Lin of the correct sentencing range, and he was not misinformed. At Lin's change of plea hearing, counsel for both the Government and Lin admitted that they "were not able to agree" on the applicable base offense level. (Transcript at 8.)

The Court specifically advised Lin that "the maximum penalty is up to life imprisonment[,]" and that "there is no minimum mandatory . . . ." (*Id.* at 23.) Lin affirmed that he "underst[ood]." (*Id.*) This lack of a mandatory minimum was in contrast to the other counts of the indictment—counts two through four—that would be dismissed under the agreement, and the Court stated that these other counts provided "[p]ossibly a minimum of 15 years to life or even ten years to life depending on the facts." (*Id.* at 7.)

The Court then advised Lin of the Sentencing Guidelines. (*Id.* at 25–26.) The Court informed him that it did not presently know "the possible jail sentence" provided under the Sentencing Guidelines (*see id.* at 26) and then specifically advised him about the two possible base offense levels. "It could be a base offense level high—was it 31 or 34? Or depending on the application, it could be 14 . . . ." (*Id.* at 34.) The Court then stated that a base level of 14 "relative to the minimum mandatory that you're facing in counts two to five is very low, because that would only subject you to a couple or a few years." (*Id.*) Lin said he "underst[ood]." (*Id.*)

From these proceedings, any reasonable person would conclude that pleading guilty entailed the very real risk of a high base offense level (and the very real reward of a low one). It was not a case where everybody misinformed Lin, but—at most—a case where only his counsel misinformed

6

him. The Government refused to agree that the base offense level of 14 was proper, and the Court specifically advised him that the level could be 34. Lin affirmed that he understood.

True to Lin's contentions, the Court did not say that a base offense level of 34 amounts to about 12.5 years on the low end. (*See* Reply, at 6–7.) But it did say that an offense level of 14 equates to a sentence of "a couple or a few years[,]" and this was "very low." (ECF No. 49 at 34.) Thus, Lin knew he could be sentenced to life (*id.* at 23), knew a sentence of a few years would be very low (*id.* at 34), and knew he could be sentenced to a "high" base offense level of 31 or 34 (*id.*). This sufficiently delineated the correct sentencing range.

Lin's other arguments similarly ring hollow. He contends that *United States v. Davis*, 428 F.3d 802 (9th Cir. 2005), is directly on point and supports his position. (*See* Motion at 7–10.) It is not. There, the district court applied the wrong standard in ruling on the motion to withdraw—one more onerous than the fair and just standard—and the Ninth Circuit reversed the trial court for that reason alone. *See Davis*, 428 F.3d at 808 (reversing because the district court applied the incorrect legal standard and explicitly stating that the panel makes no determination as to whether it would be an "abuse of discretion not to grant the defendant's motion to withdraw").

Lin also argued at the hearing that *United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005), permits withdrawal even where the plea colloquy is adequate. (*See also* Motion at 5–6.) Though true, *Garcia*, 401 F.3d at 1012, this does not change the Court's analysis on inadequate legal advice: Because the Court corrected any misunderstandings as to Lin's sentencing exposure, he may not withdraw his plea on this ground.

Finally, Lin argued at the hearing that the Court's reading of this standard under *Mayweather* was incorrect for the reasons discussed in *United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011). But that case's reasoning does not extend here. In *Bonilla*, the defendant's attorney did not advise him, prior to pleading guilty, of potential immigration consequences from that plea, and neither did the

7

court. *See id.* at 984. Therefore, because there was no evidence that the defendant likely knew of these immigration consequences, *Mayweather* did not control. *See id.* at 985. That is not the situation here. The Court did advise Lin of the consequence of pleading guilty—he could receive a base offense level of 34—and he pled guilty nevertheless.

## B. BAD FAITH

Lin argues that the Government's bad faith during plea negotiations constitutes a fair and just reason for plea withdrawal. (Motion at 10–13.) As evidence, he points to plea offer letters from the Government's previous attorney assigned to this case (since transferred) to Lin's former counsel (now judge). (*Id.* at 10; *see* ECF No. 163, Exs. B, E.) These letters indicated the base offense level is 34. (ECF No. 163, Ex. B at 4, Ex. E at 2.) Thus, Lin concludes that the Government's current counsel engaged in bad faith by actively selling the plea agreement as a "good deal." (*Id.* at 10 (internal quotation marks omitted).)

Bad faith in plea negotiations may be a fair and just reason for plea withdrawal. The Ninth Circuit has indicated that such bad faith exists where the Government (1) knows a higher guideline range might apply; (2) does not, before the plea's acceptance, inform the court or defendant of this possibility; and (3) affirmatively states at the plea hearing that the lower guideline range applies. *See Toothman*, 137 F.3d at 1400.

Neither the second nor third elements are present here. At the plea hearing, both the Government and Lin made clear that they could not agree on the applicable base offense level. Though unstated at the hearing, they presumably could not agree because the Government thought a 34 base offense level was at least possible, even though it may have also believed that 14 was more likely. The Court too knew of this issue and informed Lin that the level may be either 34 or 14.

Thus, Lin was not deceived into believing a lower base offense level definitively applies, and the Government therefore did not act in bad faith.

### C. NEWLY DISCOVERED EVIDENCE

Lin finally argues that newly discovered evidence constitutes a fair and just reason for plea withdrawal. (Motion at 13–14.) Evidence discovered after the defendant entered her plea can be a fair and just reason. *E.g.*, *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir. 2009). To permit withdrawal, it may be sufficient that newly discovered evidence could have plausibly motivated the defendant to have not pled guilty. *See Davis*, 428 F.3d at 808; *United States v. Garcia*, 401 F.3d 1008, 1011–12 (9th Cir. 2005).

Lin submitted his newly discovered evidence *ex parte*. The Government objected to this procedure. (ECF No. 159.) For efficiency, the Court stated that it would independently evaluate the evidence. Only if the Court found this evidence potentially sufficient to permit plea withdrawal would the Court consider whether the evidence need be disclosed to the Government, to enable it to adequately oppose the motion.

This Court concludes that the evidence submitted does not permit Lin to withdraw his plea; it would not have plausibly motivated him to not plead guilty. In truth, he does not seek to withdraw his plea because of this newly discovered evidence, but instead because the base offense level is 34 and not 14. Throughout these proceedings, in his papers and in Court hearings, Wei Lin has threatened that he will attempt to withdraw his plea if—and only if—the Court determined the base offense level to be 34. (*See, e.g.*, ECF No. 50 ("[I]t is respectfully requested this Court find the applicable base offense level to start at 14 and in the event it does not do so then it is respectfully requested the Court grant the defendant's cross-motion for a hearing to determine whether he should be permitted to withdraw his guilty plea . . . .").) Thus, even if Lin knew of this evidence prior to

9

pleading guilty, he would have nevertheless pled guilty based on his gamble that the base offense level would be 14. Lin even confirmed this to be true at this motion's hearing, before recanting after realizing this admission's effect on this motion.

Additional reasons motivate this Court's conclusion on newly discovered evidence. However, those reasons involve the substantive evidence itself. Because that evidence remains confidential, the Court enumerates its additional reasons in a contemporaneously-filed, ex parte order.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that defendant Lin has failed to demonstrate a fair and just reason to allow the withdrawal of his guilty plea. Accordingly, Lin's motion to withdraw his plea of guilty is denied.

SO ORDERED this 13th day of November, 2013.

_____
RAMONA V. MANGLONA
Chief Judge